**21SL-CC01372**

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

IN THE CIRCUIT COURT FOR THE COUNTY OF ST. LOUIS, MISSOURI
TWENTY-FIRST JUDICIAL CIRCUIT

| | | |
|---|---|---|
| LISA HELTERBRAND, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Cause No.: |
| v. | ) ) | JURY TRIAL DEMANDED |
| THE PROCTER & GAMBLE COMPANY, | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFF'S CLASS ACTION PETITION

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

## **TABLE OF CONTENTS**

NATURE OF ACTION ............................................................................................. 1

PARTIES .................................................................................................................. 1

JURISDICTION AND VENUE ............................................................................... 2

FACTUAL ALLEGATIONS .................................................................................... 3

DEFENDANT'S PRACTICES ARE UNETHICAL AND VIOLATED ESTABLISHED
ETHICAL STANDARDS ......................................................................................... 20

CLASS ALLEGATIONS .......................................................................................... 23

COUNT I: Violation of the MMPA By Means of Unfair Practices ............................. 26

COUNT II: Violation of the MMPA By Means of Deception ...................................... 29

COUNT III: Violation of the MMPA By Means of Omission of a Material Fact............. 30

COUNT IV: Unjust Enrichment ................................................................................ 31

PRAYER FOR RELIEF ........................................................................................... 33

JURY DEMAND ...................................................................................................... 33

i

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

Plaintiff Lisa Helterbrand brings this action on behalf of herself and all others similarly situated against Defendant The Procter & Gamble Company ("P&G" or "Defendant") and states:

## NATURE OF ACTION

1.      P&G manufactures, distributes, and markets numerous toothpastes and mouthwashes under the Crest and Oral-B brands.

2.      Under each brand, P&G sells and/or during the class period sold a toothpaste that proximately states on the front of the outside label and the toothpaste tube itself: "Gum & Enamel Repair."

3.      The representation that the toothpastes can "repair" gums is false and misleading because, while toothpaste may help control, reduce, or prevent gingivitis, it cannot repair gums, particularly for the over 47% of Americans aged 30 or older who have mild, moderate and severe gum disease called periodontitis.

4.      As a result of P&G's false and misleading label regarding the ability of the toothpaste to repair gums, P&G has been able to sell the products to more consumers and for more money than it otherwise would have had the products been properly labeled.

5.      Plaintiff Lisa Helterbrand was deceived by these misrepresentations and, as a result, purchased P&G's "Gum & Enamel Repair" toothpaste. Accordingly, she brings this action, including claims for violation of the Missouri Merchandising Practices Act ("MMPA"), § 407.010 *et seq* and unjust enrichment, on behalf of herself and other similarly situated consumers to recover damages caused by this unfair and/or deceptive practice.

## PARTIES

6.      Plaintiff Lisa Helterbrand is a citizen and resident of St. Louis County, Missouri.

7.      Defendant The Procter & Gamble Company is an Ohio corporation with a principal place of business in Cincinnati, Ohio. P&G manufactures, markets and sells, and/or did

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

so during the Class period, the Crest Gum & Enamel Repair toothpastes (in "Intensive Clean" and "Advanced Whitening" varieties) and Oral-B Gum & Enamel Repair toothpaste (collectively referred to herein as the "Class Products").

### JURISDICTION AND VENUE

8.      This Court has personal jurisdiction over P&G because P&G is authorized to conduct and does conduct business in Missouri. P&G has marketed, promoted, distributed, and sold its products, including the Crest and Oral-B products, in Missouri, has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court permissible, and the claims of Plaintiff and the Missouri consumers she seeks to represent arise out of, derive from, and are otherwise connected with P&G's conduct in Missouri.

9.      Venue is proper in the Circuit Court of the County of St. Louis because the cause of action arose in the County of St. Louis. V.A.M.S. 407.025.1.

10.     This is a class action filed under Mo Rev. Stat. § 407.025.3(6) and Missouri Supreme Court Rule of Civil Procedure 52.08(b)(2) with respect to the claim for injunctive relief and pursuant to Mo. Rev. Stat. § 407.025.3(7) and Rule 52.08(b)(3) with respect to the claim for actual damages.

2

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

## FACTUAL ALLEGATIONS

**Gum Disease (Periodontal Disease) Causes Damage to Gums that Cannot be Repaired Without Professional Treatment**

11.     Gum diseases, called periodontal diseases, "are mainly the result of infections and inflammation of the gums and bone that surround and support the teeth."[1]

12.     When someone has periodontal disease, the gum tissue pulls away from the tooth. As the disease worsens, the tissue and bone that support the tooth are destroyed. Over time, teeth may fall out or need to be removed.[2]

13.     Periodontal diseases are caused by plaque, a sticky film that is always forming on teeth. Plaque contains bacteria that produce harmful toxins. If teeth are not cleaned well, the toxins can irritate and inflame the gums.[3]

14.     If plaque is not removed, it can cause gums (gingivae) to pull away from the teeth, forming pockets in which more bacteria can collect. Plaque that is not removed hardens into tartar, also called calculus, along and under the gums.[4]

15.     "The pockets and hard calculus make it difficult to remove plaque without help from a dentist, and periodontal disease can develop."[5]

16.     "There are various stages to periodontal disease—from gingivitis (early stage) to periodontitis (advanced disease).

---

[1] Center for Disease Control and Prevention ("CDC"), Periodontal Disease, (July 10, 2013), *available at* https://www.cdc.gov/oralhealth/conditions/periodontal-disease.html (last visited Jan. 21, 2021).
[2] Am. Dental Assoc. Patient Education Content (2012), *available at* http://www.ada.org/en/~/media/ADA/Publications/Files/ADA_PatientSmart_Perio_Disease (last visited Jan. 22, 2021).
[3] ADA Patient Education Content (2012).
[4] What is Gum Disease?,142(1) J. Am. Dental Assoc. 111, *available at* https://www.ada.org/~/media/ADA/Publications/Files/for_the_dental_patient_jan_2011.pdf (last visited Jan. 22, 2021).
[5] *Id.*

**EXHIBIT A**                    **Page 5 of 92**

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

17.     In the early stage of periodontal disease (gingivitis), the gums can become swollen and red, and they may bleed.[6]

18.     According to the American Dental Association ("ADA"), at the early stage (gingivitis), the disease may be reversed if caught early and no damage has been done to the supporting structures under the teeth.

19.     Reversing gingivitis, however, requires a professional.

20.     As the ADA explains, the early-stage gingivitis reversal process involves "a professional cleaning" where the dentist uses a special tool to scrape the hardened calculus and plaque from along and beneath the gum line.[7]

21.     P&G's website similarly explains that reversing gingivitis requires "the help of your dentist . . . ."[8]

22.     "Even with these measures, some patients develop more severe periodontal disease that must be treated" further and which may require multiple visits. In this treatment, plaque and tartar are carefully removed down to the bottom of each periodontal pocket and the tooth's root surfaces are then smoothed to allow the gum tissue to heal and reattach to the tooth.[9]

23.     If early gingivitis is not properly treated, it may lead to a more serious condition called periodontitis, which can do lasting damage to the gums, bones, and other structures that support the teeth.[10]

---

[6] *Id. See also* CDC, Periodontal Disease.
[7] What is Gum Disease?,142(1) J. Am. Dental Assoc. 111; ADA Patient Education Content (2012).
[8] https://crest.com/en-us/oral-health/conditions/gums/gingivitis-symptoms-causes-treatments (last visited Jan. 22, 2021).
[9] ADA Patient Education Content (2012).
[10] ADA Patient Education Content (2012).

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

24.     As periodontal disease progresses to its more advanced form, called periodontitis, the gums can pull further away from the tooth, bone can be lost, and the teeth may loosen or even fall out."[11]

25.     P&G explains that "[p]eriodontal disease is the main cause of gum recession," which "is when the margin of the gum tissue surrounding the teeth wears away, or pulls back, exposing more of the tooth, or the tooth's root."[12]

26.     P&G recognizes that "[r]eceding gums is a widespread dental condition. Most people aren't aware that they have receding gums since it occurs gradually."[13]

27.     P&G also recognizes that "[m]ild gum recession can be treated by a professional deep cleaning in the affected area. During the deep cleaning, plaque and tartar is removed and the exposed root area is smoothed over, making it more difficult for bacteria to attach itself. Antibiotics can also be used to kill any remaining bacteria."[14]

28.     However, "[i]f a deep cleaning is not sufficient to treat the condition, because of excess loss of bone and deep pockets, receding gums surgery may be required."[15]

29.     P&G also acknowledges that brushing, flossing, and visiting the dentist is the "best way to prevent gum recession."[16]

---

[11] https://www.cdc.gov/oralhealth/conditions/periodontal-disease.html (last visited Jan. 21, 2021).
[12] https://oralb.com/en-us/oral-health/conditions/gums/receding-gums-symptoms-causes-treatments (last visited Jan. 21, 2021).
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*

5

**EXHIBIT A**                    **Page 7 of 92**

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

30.    While brushing can help prevent further gum recession, it is well accepted that it "won't correct the existing recession."[17] This is because receding gums do not grow back: "Once the gum tissue has pulled back and away from the teeth, it's gone for good."[18]

31.    Accepted methods to repair gum recession include professional deep cleaning, gum grafting (a surgical procedure in which a small amount of tissue is transferred to the gum area), and the pinhole surgical technique (a procedure that involves manipulating existing gum tissue over the exposed roots).[19]

**Many Americans Suffer from Gum Disease**

32.    According to P&G, "[s]tudies show that 30% of the population may be predisposed to gum disease, even if they take good care of their teeth."[20]

33.    According to P&G, "[m]ore than one in three Americans say . . . [t]hey are unaware that periodontal disease needs to be treated and cannot be left alone."[21]

34.    According to P&G, gingivitis occurs in 3 out of 4 Americans during their lifetime.[22]

35.    According to the CDC, nearly half of U.S. adults over the age of 30 have periodontitis.[23]

---

[17] https://www.colgate.com/en-us/oral-health/gum-disease/can-receding-gums-grow-back (last visited Jan. 21, 2021).

[18] *Id.*

[19] *Id.*

[20] https://oralb.com/en-us/oral-health/conditions/gums/receding-gums-symptoms-causes-treatments (last visited Jan. 21, 2021).

[21] https://crest.com/en-us/oral-health/why-crest/faq/history-toothpaste (last visited Jan. 22, 2021).

[22] https://crest.com/en-us/oral-health/conditions/gums/gingivitis-symptoms-causes-treatments (last visited Jan. 22, 2021).

[23] CDC, Periodontal Disease (*citing* Eke PI, Dye B, Wei L, Thornton-Evans G, Genco R. Prevalence of Periodontitis in Adults in the United States: 2009 and 2010. J Dent Res. Published online 30 August 2012:1–7, abstract available at https://journals.sagepub.com/doi/pdf/10.1177/0022034512457373 (last visited Jan. 21, 2021).

Electronically Filed - St. Louis County - March 26, 2021 - 04:30 PM

36.    Periodontitis is more common in men than women, those living below the federal poverty level, those with less than a high school education, and current smokers.[24]

**P&G's Crest Toothpaste**

37.    P&G has been selling toothpaste under the Crest brand since the 1950s.[25]

38.    P&G markets Crest as "a leader in dental health innovations since its inception in 1955."[26]

39.    Currently, P&G sells Crest toothpastes under eight product-lines with the following categories: (1) Future-Proof; (2) Clean + Freshen; (3) Enamel; (4) Sensitivity; (5) All-Around Protection; (6) Kids; (7) Whitening; and (8) Gum Health.[27]



40.    P&G offers a variety of toothpastes in its "Future-Proof" line that it advertises as removing plaque along the gum line or defending gums against future issues, such as the following[28]:

---

[24] *Id.*
[25] https://crest.com/en-us/oral-health/why-crest/faq/history-toothpaste (last visited Jan. 22, 2021).
[26] *Id.*
[27] https://crest.com/en-us/products/compare/crest-toothpaste (last visited Jan. 22, 2021).
[28] https://crest.com/en-us/products/toothpaste/future-proof (last visited Jan. 21, 2021).

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM



41.     P&G also offers different toothpastes in its "All Around Protection" line that it advertises as helping to prevent plaque, tartar, and gingivitis, stating that its Pro-Health Advanced Gum Protection Toothpaste provides "Crest's highest level of protection against gingivitis and plaque bacteria to help keep gums healthy," as follows[29]:

---

[29] https://crest.com/en-us/products/toothpaste/all-around-protection (last visited Jan. 21, 2021).

8

**EXHIBIT A**                    **Page 10 of 92**

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM




42.    In this "All Around Protection" line, P&G also offers the Crest Pro-Health HD Daily Two Step Toothpaste System, which it describes as a 2-step system that "reduces plaque, polishes, and whitens for superior results"[30]:

---

[30] https://crest.com/en-us/products/compare/crest-toothpaste (last visited Jan. 21, 2021).

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM



**P&G's Marketing of Crest Toothpaste for Gum & Enamel Repair**

43.     P&G also offers different toothpastes in its "Gum Health" line that it advertises on its website as being created after years of research and being specially formulated to reverse early gum disease and issues that come with it, as follows[31]:

# CREST GUM CARE COLLECTION

**Created after years of research by Crest scientists, these toothpastes have been specially formulated to help reverse early gum disease and the issues that come with it.**

---

[31] *Id.*

10

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

44.     Upon information and belief, in or around April 2018, P&G introduced a new

Crest toothpaste in the Gum Health line called "Crest Gum & Enamel Repair."

45.     The label on the front of the Crest Gum & Enamel Repair toothpaste box

displayed on store shelves and online advertisements, and the toothpaste tube, is shown below[32]:





---

[32] The first picture is available at https://www.walgreens.com/store/c/crest-gum-&-enamel-repair-toothpaste/ID=prod6383755-product (last visited Jan. 21, 2021). The second picture is available at https://crest.com/en-us/products/toothpaste/gum-enamel-repair-toothpaste-intensive-clean (last visited Jan. 21, 2021).

11

**EXHIBIT A**                    **Page 13 of 92**

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

46.    P&G has other toothpastes in its "Gum Health" line, such as its "Gum and Breath Purify" toothpaste; "Gum Detoxify" toothpaste; "Gum and Sensitivity" toothpaste; and "Advanced Gum Restore" toothpaste.

47.    The label for the "Gum Detoxify" toothpaste states that it "[n]eutralizes plaque bacteria, even around the gum line," and P&G advertisements state that this toothpaste "penetrates hard to reach areas to remove plaque bacteria and helps reverse gingivitis."[33]



# CREST GUM DETOXIFY DEEP CLEAN TOOTHPASTE

☆☆☆☆☆  **4.7/5** ( 314 )

**Read All 314 Reviews**    Write A Review

Activated foam formula penetrates hard to reach areas to remove plaque bacteria and helps reverse gingivitis.

---

[33] https://crest.com/en-us/products/toothpaste/crest-gum-detoxify-deep-clean-toothpaste (last visited Jan. 21, 2021).

**EXHIBIT A**                    **Page 14 of 92**

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

48.    The label for the "Gum and Breath Purify" toothpaste states that it provides "[c]linically proven healthier gums," and P&G advertisements state that this toothpaste "combats . . . bacteria at the gum line, for clinically proven healthier gums."[34]



# GUM AND BREATH PURIFY DEEP CLEAN TOOTHPASTE

⭐⭐⭐⭐⭐  **4.85/5** ( 52 )

**Read All 52 Reviews**    **Write A Review**

Unique formula infused with essential oils combats bad breath bacteria at the gum line, for clinically proven healthier gums.

49.    The label for the "Advanced Gum Restore" toothpaste states that it "[p]romotes Gum Healing," and P&G advertisements state that this toothpaste "promot[es] gum healing while fighting gingivitis."[35]

---

[34] https://crest.com/en-us/products/toothpaste/crest-gum-breath-purify-deep-clean-toothpaste (last visited Jan. 21, 2021).
[35] https://crest.com/en-us/products/toothpaste/crest-advanced-gum-restore-deep-clean (last visited Jan. 21, 2021).

13

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM



# CREST PRO-HEALTH ADVANCED GUM RESTORE TOOTHPASTE, DEEP CLEAN 3.7OZ

No Review Message

( Write A Review )

Advanced Amino Acid formula restores gums by promoting gum healing while fighting gingivitis.

**P&G's Oral-B Gum & Enamel Repair Toothpaste**

50.    Upon information and belief, in or around November 2017, P&G introduced a new toothpaste under its Oral-B brand called Oral-B Gum & Enamel Repair.



14

**EXHIBIT A**                              **Page 16 of 92**

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

**The Plain, Ordinary, and Reasonable Meaning of "Gum & Enamel Repair" is that the Product Repairs Gums and Enamel**

51.     Based on the different varieties of toothpastes in the "Future-Proof" line and P&G's labeling and advertising of same, P&G intended to advertise the Gum Health line as providing benefits other than:

- "remov[ing] . . . plaque along the gum line, teeth, cheeks, and tongue" [Pro-Health Pro/Active Defense Deep Clean];

- "neutraliz[ing] plaque bacteria" [Pro Health Pro/Active Defense Whitening]; or

- "defend[ing] teeth, cheeks, tongue and gums against future issues" [against gingivitis and plaque bacteria" [Pro Health Pro/Active Defense Whitening].

52.     Based on the different varieties of toothpastes in the "All Around Protection" line and P&G's labeling and advertising of same, P&G intended to advertise the Gum Health line as providing benefits other than:

- "prevent[ing] plaque, tartar, and gingivitis" [Crest Sensitivity Complete Protection];

- providing the "highest level of protection against gingivitis and plaque bacteria to help keep gums healthy" [Pro-Health Advanced Gum Protection]; or

- providing the "biggest breakthrough in toothpaste since fluoride . . . [that] reduces plaque, polishes, and whitens for superior results" [Pro-Health [HD] Sensitivity].

15

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

53.     Based on P&G's own statements, P&G intended to market its Gum Health line as being specially formulated to reverse early "gum disease and issues that come with it," which would include gum damage, gum recession, and periodontitis.

54.     Based on the different varieties of toothpastes in the Gum Health line and P&G's labeling and advertising of same, P&G intended different meanings for the terms:

- "purify" [Gum & Breath Purify];

- "detoxify" [Gum Detoxify];

- "restore" [Pro-Health Advanced Gum Restore]; and

- "repair" [Gum & Enamel Repair].

55.     Similarly, P&G labeled and advertised the other toothpastes in the Gum Health line as

- "promoting gum healing" [Gum Restore];

- "fighting gingivitis" [Gum Restore];

- "combat[ing] . . . bacteria at the gum line" [Gum & Breath Purify];

- "remov[ing] plaque bacteria" [Gum Detoxify];

- "neutraliz[ing] plaque bacteria . . . around the gum line" [Gum Detoxify]; and

- "revers[ing] gingivitis" [Gum Detoxify].

56.     By offering a different toothpaste in the Gum Health line called Gum & Enamel Repair, P&G intended to suggest that Gum & Enamel Repair toothpaste had different benefits from the other toothpastes in the Gum Health line, or otherwise sold by P&G—namely, the ability to repair gums.

57.     The plain and ordinary interpretation of "Gum & Enamel Repair" is that "Gum" and "Enamel" are both objects of the verb "Repair."

Electronically Filed - St. Louis County - March 26, 2021 - 04:30 PM

58.    Besides being the most reasonable interpretation, this interpretation is also supported by P&G's labeling of the other toothpastes in the Gum Health line, which include other verbs with one or more objects, such as "Gum Detoxify," "Gum Restore," and "Gum & Breath Purify."

**The Gum & Enamel Repair Label is False or Misleading**

59.    Toothpaste ingredients and regular brushing can prevent gingivitis.

60.    As set forth above, however, no toothpaste or toothpaste ingredient can repair gums or damage done to gums by periodontal disease.

61.    This is because, at every stage of periodontal disease, professional treatment is needed to repair the gums.

62.    Accordingly, the prominent representation of "Gum & Enamel Repair" is false and/or misleading.

63.    There are no federal requirements specifically addressing the ability of toothpastes to repair gums.

64.    When the FDA issued a proposed monograph for labeling of antigingivitis/antiplaque drug products, it did not refer to or address any indications for gum repair.

65.    Instead, the FDA's proposed monograph states the indications of an antigingivitis product as helping to:

- "control" "reduce" or "prevent" gingivitis (for antigingivitis products);

- "interfere with harmful effects of plaque associated with gingivitis" (if the product contains stannous fluoride); or

17

- "control" "reduce" "prevent" or "remove" plaque that leads to gingivitis (for antigingivitis/antiplaque products).[36]

66.    Repairing gums is materially different from controlling, reducing, and preventing gingivitis or removing plaque that leads to gingivitis.

67.    P&G's prominent representation of "Gum & Enamel Repair" on its toothpaste label is deceptive because a reasonable consumer like Plaintiff would expect the product to be capable of repairing gums.

68.    Reasonable consumers cannot be expected to know that a toothpaste representing it can repair gums cannot actually repair gums.

**P&G Intended to Mislead Consumers and Thereby Gain a Commercial Advantage**

69.    By placing the representation "Gum & Enamel Repair" in large font prominently on the front of the label, P&G intended that consumers would rely on the representation in deciding to purchase the product.

70.    P&G intended to profit from the use of the false or misleading label by taking away market share from its competitors, which do not offer a "Gum & Enamel Repair" toothpaste, as shown in the following examples:



---

[36] 68 Fed. Reg. 103, 32285-86 (proposing 21 C.F.R. § 356.65).

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM







71.     The deceptive nature of P&G's false and misleading label is especially egregious when considered in the context of the other toothpastes in the marketplace (including those manufactured, marketed, and sold by P&G)—none of which contain the phrase "Gum & Enamel Repair."

72.     In or around July 2018, the Advertising Standards Authority ("ASA"), which is the United Kingdom's independent advertising regulator, banned P&G from running an advertisement for the Oral-B Gum & Enamel Repair toothpaste because the ad's references to "repair" and "restore" suggested the toothpaste could reverse the effects of damaged gums caused by gum disease, and the ad's promotion of the toothpaste's "active repair technology"

19

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

and claims and representations of "gum rejuvenation" would be understood by viewers as medical claims.[37]

73.    Thereafter, despite this ruling, P&G did not alter the label on the Class Products in the United States.

**Plaintiff's Purchase**

74.    In or around July 2020, Plaintiff purchased one tube of P&G's Crest Gum & Enamel Repair toothpaste in St. Louis County, Missouri.

75.    Prior to making her purchase, Plaintiff was exposed to and read the statement "Gum & Enamel Repair" prominently displayed on the front of the product label.

76.    At all times, Plaintiff believed and had a reasonable expectation that the labeling on the products was truthful and accurate.

77.    As a direct result of P&G's false and/or misleading "Gum & Enamel Repair" label on the Class Products as set forth above, Plaintiff and other members of the Class have been deprived of the benefit of their bargain in purchasing these products because the products had less value than represented.

78.    Consequently, Plaintiff and members of the Class have suffered injury and lost money and property in purchasing the Class Products.

## DEFENDANT'S PRACTICES ARE UNETHICAL AND VIOLATED ESTABLISHED ETHICAL STANDARDS

79.    Defendant's practices of misrepresenting that the Class Products repair gums, as alleged herein, violate generally accepted ethical principles of business conduct.

---

[37] https://www.asa.org.uk/rulings/procter---gamble--health---beauty-care--ltd-a17-398219.html (last visited Jan. 21, 2021).

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

80.    The basis for the allegation that it is unethical to engage in the above practices comes, in part, from established ethical principles recognized by the Direct Marketing Association ("DMA"), the leading industry association for companies that, like Defendant, market directly to consumers, and the American Marketing Association, "the leading organization for marketers [and] the trusted go-to resource for marketers and academics."[38]

**DMA Ethical Guidelines**

81.    DMA published principles of ethical business practices in Direct Marketing Association's Guidelines for Ethical Business Practices ("DMA Ethical Guidelines") (2014), Exhibit A, which is incorporated herein by reference.

82.    These Ethical Guidelines "are intended to provide individuals and organizations involved in direct marketing in all media with generally accepted principles of conduct." *Id.* at 2.

83.    The Ethical Guidelines apply to all marketers, not just those that belong to DMA. DMA states that they "reflect DMA's long-standing policy of high levels of ethics and the responsibility of the Association, its members, *and all marketers* to maintain consumer and community relationships that are based on fair and ethical principles." *Id.* (emphasis added).

84.    DMA's Ethical Guidelines are set forth in a series of "Articles," each of which states a separate ethical principle.

85.    Article #1 of DMA's Ethical Guidelines is "HONESTY AND CLARITY OF OFFER." It states: "All offers should be clear, honest and complete so that the consumer may know the exact nature of what is being offered …."

86.    By misrepresenting that the Class Products repair gums, Defendant violated this principle because its offer, as set forth on the label, was not clear, honest and complete.

---

[38] https://www.crunchbase.com/organization/american-marketing-association#section-overview (accessed 1/21/2021).

87. In July 2018, DMA (then going by the name "Data & Marketing Association") was acquired by the Association of National Advertisers ("ANA"), "one of the oldest and most venerated trade association in the marketing industry."[39] ANA adopted DMA's Ethical Guidelines, which it publishes on its web site as Part II of its Member Principles under the heading, "Marketing."[40] Thus, these ethical principles are still current and applicable.

**AMA Statement of Ethics**

88. The American Marketing Association ("AMA") "commits itself to promoting the highest standard of professional ethical norms and values ..." Exhibit B.[41] As such, it has published its "Statement of Ethics." *Id.* AMA states that "marketers are expected to embrace the highest professional ethical norms and the ethical values implied by our responsibility toward multiple stakeholders (e.g., customers ...)." *Id.* Thus, the Statement of Ethics contains "Ethical Norms," which "are established standards of conduct that are expected and maintained by society and/or professional organizations." *Id.*

89. The AMA's Ethical Norms state that marketers must "consciously avoid[] harmful actions and omissions," "striv[e] for good faith and fair dealing," "avoid[] deception in ... pricing, communication, and delivery of distribution," and affirm "core values" of honesty, ... fairness [and] transparency."

90. By misrepresenting that the Class Products can repair gums, Defendant violated these Ethical Norms because, among other reasons, it did not strive (or achieve) good faith and fair dealing, did not avoid deception in pricing, communication and delivery of distribution, and did not affirm the core values of honesty, fairness and transparency.

---

[39] https://www.ana.net/content/show/id/49074 (accessed 1/21/2021).
[40] https://thedma.org/accountability/ethics-and-compliance/dma-ethical-guidelines/ (accessed 1/21/2021).
[41] https://www.ama.org/codes-of-conduct/ (accessed 1/21/2021).

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

91.    The AMA has also published "Ethical Values," which "represent the collective conception of what communities find desirable, important and morally proper." *Id.* AMA states that marketers' Ethical Values include honesty, meaning "[s]triv[ing] to be truthful in all situations and at all times" and "[h]onoring our explicit and implicit commitments and promises."

92.    Another Ethical Value, according to the AMA, is fairness, which includes "[r]epresent[ing] products in a clear way in selling, advertising and other forms of communication," "avoid[ing] false, misleading and deceptive promotion," and "[r]efusing to engage in 'bait-and-switch' tactics." *Id.*

93.    Yet another Ethical Value, according to the AMA, is "Transparency," which includes "[s]triv[ing] to communicate clearly with all constituencies." *Id.*

94.    By misrepresenting that the Class Products can repair gums, Defendant violated these Ethical Values, because, among other reasons, it was not truthful (to say nothing of not striving to be truthful) in all situations, did not honor its explicit and implicit commitments and promises, did not represent its products in a clear way, did not avoid false, misleading and deceptive promotion, and did not communicate clearly.

## CLASS ALLEGATIONS

95.    Plaintiff brings this action on behalf of herself and as a representative of all others who are similarly situated. Plaintiff seeks certification of the following class:

> All persons in the state of Missouri who purchased one or more of
> the Class Products in Missouri during the Class Period.
>
> ("Class").
>
> All Class Members who purchased one or more of the Class
> Products for personal, family, or household purposes.
>
> ("MMPA Subclass").

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

96.     Excluded from the Class are any employee of P&G, as well as the officers, directors, affiliates, legal representatives, predecessors, successors, and assigns of P&G. Also excluded are the judges and court personnel in this case and any members of their immediate families.

97.     Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

98.     The Class Period is that period within the statute of limitations for this action and extending until a Class is certified herein.

99.     This action is properly maintainable as a class action under Missouri Supreme Court Rule 52.08.

100.     **Numerosity.** The members of the Class are so numerous that joinder of all members is impractical. In oral care, P&G has the "number two market share position with nearly 20% global market share behind [its] Oral-B and Crest brands."[42]

101.     **Commonality and Predominance.** There are questions of law and fact common to the Class that predominate over any questions affecting individual members of the Class. These common questions include, without limitation:

a.     Whether the representation of "Gum & Enamel Repair" on the Class Products was false or misleading;

b.     Whether the representation of "Gum & Enamel Repair" on the Class Products was material;

---

[42] P&G 2019 Annual Report, p. 13, *available at* https://www.annualreports.com/HostedData/AnnualReports/PDF/NYSE_PG_2019.pdf (last visited Jan. 22, 2021).

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

    c.   Whether the representation of "Gum & Enamel Repair" on the Class Products constitutes the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact;

    d.   Whether P&G has been unjustly enriched by its retention of profits from the sale of the misleading Class Products that it advertised, marketed, and sold;

    e.   Whether Plaintiff and the members of the Class are entitled to an award of compensatory damages and/or restitution and/or disgorgement; and

    f.   Whether injunctive, declaratory, and/or or other equitable relief is warranted pursuant to the MMPA.

102.    **Adequacy.** Plaintiff is a member of the Class she seeks to represent, is committed to the vigorous prosecution of this action, and has retained competent counsel experienced in the prosecution of class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

103.    **Typicality.** Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and all Class Members have been damaged by Defendant's misrepresentations described herein.

104.    **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of the controversy. Because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of P&G, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, Class members will continue to suffer losses and P&G's misconduct will proceed without remedy. Even if Class members themselves could

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard that might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court. Finally, Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

105.    **Class Action on Limited Issues.** Because there are common individual issues among the Class, it is appropriate for this action to be maintained as a class action with respect to particular issues if necessary. *See* Mo. Sup. Ct. R. 52.08(c)(4).

## COUNT I: Violation of the MMPA By Means of Unfair Practices
### (Plaintiff and the MMPA Subclass)

106.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

107.    The actions of Defendant alleged herein violated, and continue to violate, the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010 *et seq*, because they constitute unfair practices.

108.    The MMPA, Mo. Rev. Stat. § 407.020, states in relevant part:

The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice.

26

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

109.   Plaintiff, on behalf of herself and all others similarly situated in Missouri, is entitled to bring this action pursuant to Mo. Rev. Stat. § 407.025, which provides in relevant part that:

> 1. Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.
>
> 2. Persons entitled to bring an action pursuant to subsection 1 of this section may, if the unlawful method, act or practice has caused similar injury to numerous other persons, institute an action as representative or representatives of a class against one or more defendants as representatives of a class . . . . In any action brought pursuant to this section, the court may in its discretion order, in addition to damages, injunction or other equitable relief and reasonable attorney's fees.

110.   The MMPA defines "merchandise" as any objects, wares, goods, commodities, intangibles, real estate or services. Mo. Rev. Stat. § 407.010. Thus, the Class Products that Defendant sells constitutes merchandise.

111.   In selling the Class Products to consumers, Defendant is engaging in the sale of merchandise in trade or commerce.

112.   Plaintiff and the MMPA Subclass purchased Class Products for personal, family, or household purposes and received Class Products that did not have the characteristics, uses, and/or benefits that Defendant represented.

113.   The Missouri Attorney General has promulgated a regulation defining the meaning of unfair practices as used in the MMPA. That definition states that unethical practices are unfair in violation of the above statute. Mo. Code Regs. tit. 15, § 60-8.020.

27

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

114.    Missouri case law provides that the MMPA's "literal words cover *every practice imaginable and every unfairness to whatever degree*." *Conway v. CitiMortgage, Inc.*, <u>438 S.W.3d 410, 416</u> (Mo. 2014) (quoting *Ports Petroleum Co., Inc. of Ohio v. Nixon*, <u>37 S.W.3d 237, 240</u> (Mo. banc 2001). Furthermore, the statute's "plain and ordinary meaning of the words themselves ... are unrestricted, all-encompassing and exceedingly broad." *Id.* at 240.

115.    Pursuant to the MMPA, Defendant has a duty not to engage in any unfair practice in connection with the sale of any merchandise in trade or commerce. For the reasons stated herein, it breached that duty.

116.    Falsely representing that the Class Products can repair gums is unfair and unethical and violates generally accepted principles of ethical business conduct, including the principles of the Direct Marketing Association and the American Marketing Association, as set forth above.

117.    Plaintiff and the MMPA Subclass thereby suffered ascertainable loss in that they overpaid for the Class Products because they paid a price that was based on Defendant's material false or misleading statements regarding the ability of the Class Products to repair gums, in an amount to be proved at trial.

118.    Defendant's acts and practices alleged herein have directly, foreseeably, and proximately caused loss, damages, and injury to Plaintiff and the MMPA Subclass in an amount to be determined at trial.

119.    WHEREFORE, Plaintiff and the MMPA Subclass pray for the relief requested in the Prayer for Relief set forth below in this Petition.

**EXHIBIT A**                    **Page 30 of 92**

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

**COUNT II: Violation of the MMPA By Means of Deception**
**(Plaintiff and the MMPA Subclass)**

120.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

121.    The actions of Defendant alleged herein violated, and continue to violate, the MMPA because they constitute deception.

122.    <u>Mo. Rev. Stat. § 407.020.1</u> prohibits "[t]he act, use or employment by any person of any … deception … in connection with the sale or advertisement of any merchandise in trade or commerce."

123.    The Missouri Attorney General has promulgated a regulation defining the meaning of deception as used in the MMPA. That definition states that deception is any "method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression." Mo. Code Regs. Ann. tit. 15, § 60-9.020.

124.    Pursuant to the MMPA, Defendant has a duty not to engage in any deception in connection with the sale or advertisement of any merchandise in trade or commerce. For the reasons stated herein, it breached that duty.

125.    Defendant misrepresenting that the Class Products can repair gums constitutes deception under the MMPA, because this act or practice has the tendency or capacity to mislead, deceive, cheat, and/or create a false impression. Such practice misleads and deceives consumers into believing that the Class Products can repair gums, when in reality that is not true.

126.    Plaintiff and the MMPA Subclass suffered ascertainable loss in that they overpaid for the Class Products because they paid a price that was based on Defendant's material false or

29

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

misleading statements regarding the ability of the Class Products to repair gums, in an amount to be proved at trial.

127.    Defendant's deceptive acts and practices have directly, foreseeably, and proximately caused loss, damages and injury to Plaintiff and the MMPA Subclass.

128.    WHEREFORE, Plaintiff and the MMPA Subclass pray for the relief requested in the Prayer for Relief set forth below in this Petition.

### COUNT III: Violation of the MMPA By Means of Omission of a Material Fact
### (Plaintiff and the MMPA Subclass)

129.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

130.    The actions of Defendant alleged herein violated, and continue to violate, the MMPA because they constitute omission of a material fact.

131.    Mo. Rev. Stat. § 407.020.1 prohibits "[t]he act, use or employment by any person of any … omission of a material fact … in connection with the sale or advertisement of any merchandise in trade or commerce."

132.    The Missouri Attorney General has promulgated a regulation stating: "It is a misrepresentation for any person in connection with the advertisement or sale of merchandise to omit to state a material fact necessary in order to make statements made, in light of the circumstances under which they are made, not misleading." Mo. Code Regs. Ann. tit. 15, § 60-9.090.

133.    A material fact is "any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a person to manifest his/her assent, or which the seller knows would be likely to induce a particular

30

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

consumer to manifest his/her assent, or which would be likely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner." 15 C.S.R. § 60-9.010.

134.    Pursuant to the MMPA, Defendant has a duty not to omit material facts in connection with the sale or advertisement of any merchandise in trade or commerce. For the reasons stated herein, it breached that duty.

135.    By labeling the Class Products "Gum & Enamel Repair" and omitting that the Class Products cannot actually repair damaged gums, Defendant has omitted material facts necessary to make the label of the Class Products not misleading.

136.    Omitting that the Class Products cannot actually repair damaged gums is material because a reasonable consumer would likely consider this important to know when making a purchasing decision or this information would likely induce a reasonable consumer to change his or her decision to purchase the Class Products.

137.    Plaintiff and the MMPA Subclass suffered ascertainable loss in that they overpaid for the Class Products because they paid a price that was based on Defendant's omission of a material fact regarding the ability of the Class Products to repair gums, in an amount to be proved at trial.

138.    Defendant's omissions have directly, foreseeably, and proximately caused loss, damages and injury to Plaintiff and the MMPA Subclass.

139.    WHEREFORE, Plaintiff and the MMPA Subclass pray for the relief requested in the Prayer for Relief set forth below in this Petition.

### **COUNT IV: Unjust Enrichment**

140.    Plaintiff hereby incorporates and adopts by reference the allegations contained in paragraphs 1-94 of this Petition, and to the extent necessary, pleads this Count in the alternative.

31

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

141.     Plaintiff and the Class members conferred a monetary benefit on Defendant when they paid for the Class Products.

142.     As set forth above, Defendant knowingly made false and/or misleading statements of material facts and/or misrepresented and/or concealed material facts in connection with its marketing, advertising, and sales of the Class Products.

143.     Defendant has retained Plaintiff's and the Class members' purchase price despite its knowing false and/or misleading statements and/or misrepresentations and/or concealments on the Class Products' labels.

144.     As a result, Defendant is unjustly enriched at the expense of Plaintiff and the Class.

145.     Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and the Class that Defendant gained through deceptive and fraudulent material false and/or misleading statements and/or misrepresentations and/or omissions in the marketing, advertising, and selling of the Class Products.

146.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class members overpaid for the Class Products because they paid a price that was based on Defendant's material false and/or misleading statements and/or misrepresentations and/or omissions regarding the ability of the Class Products to repair gums.

147.     Accordingly, Plaintiff and the Class seek full disgorgement and restitution of the amounts Defendant has retained as a result of the unlawful and/or wrongful conduct alleged herein, an amount which will be proved at trial.

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below.

32

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, seeks the following relief:

    A. certification of the Class as requested herein;

    B. appointing Plaintiff as the Class Representative and Plaintiff's attorneys as Class Counsel;

    C. awarding Plaintiff and the Class compensatory damages, in an amount to be proved at trial;

    D. awarding Plaintiff and the Class injunctive relief as permitted by law or equity, including, but not limited to, enjoining Defendant from continuing the unlawful practices as set forth herein and ordering Defendant to engage in a corrective advertising campaign;

    E. awarding attorneys' fees and costs; and

    F. providing such further relief as may be just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: March 26, 2021        Respectfully submitted,

**LAW OFFICE OF RICHARD S. CORNFELD, LLC**

By: _/s/ Richard S. Cornfeld_
    Richard S. Cornfeld, MO Bar #31046
    Daniel S. Levy, MO Bar #66039
    1010 Market Street, Suite 1645
    St. Louis, MO 63101
    P. 314-241-5799
    F. 314-241-5788
    rcornfeld@cornfeldlegal.com
    dlevy@cornfeldlegal.com

    And

Electronically Filed - St Louis County - March 26, 2021 - 04:30 PM

Mark C. Goldenberg, MO Bar #43155
Thomas P. Rosenfeld MO Bar #35305
Kevin P. Green MO Bar #63497
GOLDENBERG HELLER & ANTOGNOLI, P.C.
2227 South State Route 157
Edwardsville, IL 62025
618-656-5150
mark@ghalaw.com
tom@ghalaw.com
kevin@ghalaw.com

***Attorneys for Plaintiff***

34

**EXHIBIT A**                    **Page 36 of 92**