UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LISA HELTERBRAND, On Behalf of Herself and All Others Similarly Situated, <br><br>  Plaintiff, <br><br> vs. <br><br> THE PROCTER & GAMBLE COMPANY, <br><br>  Defendant. | Case No. 4:21 CV 855 RWS |

## ORDER OF REMAND

On July 14, 2021, Defendant The Procter & Gamble Company ("P&G") removed this putative consumer protection class action lawsuit from state court. In her state court petition, Plaintiff Lisa Helterbrand ("Helterbrand") alleged that P&G has engaged in deceptive marketing of its Crest and Oral-B "Gum & Enamel Repair" toothpastes. She claimed that P&G's conduct violated the Missouri Merchandising Practices Act ("MMPA") and that P&G had been unjustly enriched. In its Notice of Removal, P&G argued that the suit could have originally been filed in federal court under 28 U.S.C. § 1332(a)(1) (diversity jurisdiction) or 28 U.S.C. § 1332(d)(2)(A) (the Class Action Fairness Act) ("CAFA").

1

On August 5, 2021, Helterbrand filed a motion to remand the case, alleging that P&G had not met its burden to show that the amount in controversy requirements under either § 1332(a)(1) or § 1332(d)(2)(A) are met. The motion has been fully briefed. The parties disagree on several issues for purposes of calculating the amount in controversy, including whether punitive damages may be considered; if and how injunctive relief should be measured; and what attorneys' fees are appropriate.

## **LEGAL STANDARD**

Federal courts are courts of limited jurisdiction and "the requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." Godfrey v. Pulitzer Pub. Co., 161 F.3d 1137, 1141 (8th Cir. 1998). A civil case brought in state court may be removed by a defendant to federal court if it could have been brought there originally. See 28 U.S.C. § 1441(a). Federal district courts have original diversity jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a). Additionally, the Class Action Fairness Act grants district courts original diversity jurisdiction in class action suits if certain requirements are met, including: (1) the aggregated matter in

2

controversy exceeds the sum or value of $5,000,000; (2) there is diversity of citizenship between at least one plaintiff and one defendant; and (3) there are at least 100 members in the putative class.  28 U.S.C. § 1332(d); Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 592 (2013).

The party seeking removal and opposing remand bears the burden of establishing that federal subject matter jurisdiction exists.  Waters v. Ferrara Candy Co., 873 F.3d 633, 636 (8th Cir. 2017); In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1993).  To meet this burden, the party must "establish not whether the damages [sought] *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are." Pirozzi v. Massage Envy Franchising, LLC, 938 F.3d 981, 984 (8th Cir. 2019) (citation omitted).  If the parties dispute the amount in controversy, "both sides submit proof and the court decides by a preponderance of the evidence whether the amount-in-controversy requirement has been satisfied." Dart Cherokee Basin Operating Co., LLC v. Owen, 574 U.S. 81, 87 (2014).

## ANALYSIS

Helterbrand does not offer an exact estimate as to her individual damages, but states that they are "nothing close to $75,000" because she purchased only one tube of toothpaste.  As to CAFA jurisdiction, she accepts the compensatory damages

figure that P&G offered in its Notice of Removal ($1,175,846.30).[1]  However, because the class period extends through class certification, she estimates that compensatory damages would ultimately be closer to $1,600,000.  She estimates attorneys' fees are $528,000, 33% of the compensatory damages total.  Since she believes that punitive damages cannot be considered because she did not include a claim for them in her state court petition, Helterbrand arrives at a total of $2,128,000.  She does not offer any figures about the value of injunctive relief.

In its memorandum in opposition, P&G disputes Helterbrand's attorneys' fees estimate.  However, P&G contends that the amount in controversy would exceed $5,000,000 even accepting Helterbrand's attorneys' fees estimate because punitive damages should enter into the calculation.  Using a "conservative" 2:1 punitive damage ratio, P&G estimates that the case involves $4,256,000 in punitive damages, bringing the total amount in controversy to over $6,000,000 before even considering the potential cost of injunctive relief (which P&G estimates to be approximately $1,000,000).

### 1. Punitive Damages

Helterbrand's original petition did not include a claim for punitive damages.

---

[1] Along with its Notice of Removal, P&G submitted the affidavit of its Senior Brand Director Suhashini Vittal, who estimated that sales of the toothpastes at issue in this case in the state of Missouri, from June 2018 until and including June 2021, total $1,175,846.30.

She points to Mo. Rev. Stat. § 510.261.5, which "requires leave of court to add…a punitive damages claim to a pleading," to explain why she did not, and could not, include a claim for punitive damages in her petition. She also cites <u>Hurst v. Nissan N. Am., Inc.</u>, 511 F. App'x 584, 586 (8th Cir. 2013), in which the United States Court of Appeals for the Eighth Circuit affirmed the district court's finding that "because punitive damages were not sought in the state court petition, such damages were legally unrecoverable under Missouri law" and could not be considered when determining the amount in controversy. The Eighth Circuit has cited <u>Hurst</u> when distinguishing between petitions that seek punitive damages, even "in an unstated aggregate amount," from those that do not seek such damages altogether. <u>See Pirozzi</u>, 938 F.3d at 984 (including punitive damages in the amount in controversy calculation because the "class action petition explicitly sought to recover punitive damages, unlike the class action complaint in [<u>Hurst</u>]").

P&G did not address the applicability of <u>Hurst</u> to this case. Rather, P&G simply contends that punitive damages are properly considered when determining the amount in controversy and emphasizes that punitive damages are available under the MMPA. P&G also cites <u>Embry v. Ventura Foods, LLC</u>, 2020 WL 3077058 (E.D. Mo. June 10, 2020) for the proposition that "it is not improper to consider the possibility of punitive damages despite plaintiff not requesting punitive damages in

5

light of the fact that they are available under the statute." However, in Embry, the plaintiff explicitly disclaimed punitive damages in her petition. The court found such a disclaimer akin to a putative class representative's stipulation that she would not seek punitive damages, which the United States Supreme Court has deemed invalid "because a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." Standard Fire, 568 U.S. at 593. Helterbrand has not disclaimed punitive damages, nor has she suggested that she would not later file a motion for leave to seek punitive damages. Rather, her petition, like that in Hurst, does not discuss punitive damages at all.

Finally, P&G argues that because Helterbrand's counsel has a similar case currently pending in the Southern District of Illinois which did seek punitive damages in the petition, Helterbrand "will likely be seeking similar relief at a later time." While it is possible that Helterbrand may seek leave to add a claim of punitive damages at some point in the litigation, in accordance with Mo. Rev. Stat. § 510.261.5, I must look to the amount in controversy at the time of removal when deciding whether jurisdiction exists. Hatridge v. Aetna Ca. & Sur. Co., 415 F.2d 809, 814 (8th Cir. 1969). Punitive damages were not sought in the petition. As a result, they cannot be considered at this stage. See Faltermeier v. FCA US LLC, 2016 WL 10879705, at *2 n.1 (W.D. Mo. May 26, 2016) ("Although the MMPA

6

provides for an award of punitive damages…Plaintiff did not seek them in his Petition.  Therefore, the Court will not include them in calculating the amount in controversy") (citing Hurst, 511 F. App'x at 586).

## 2. Injunctive Relief

The parties also dispute how to determine the value of potential injunctive relief.  Helterbrand argues that it should be measured by the value of the litigation from her perspective (the "plaintiff's viewpoint" rule) while P&G argues that it can be measured by the value of the litigation to either party (the "either viewpoint" rule).  In non-CAFA cases, the Eighth Circuit has adopted the plaintiff's viewpoint rule. See, e.g., Smith v. Am. States Preferred Ins. Co., 249 F.3d 812, 813 (8th Cir. 2001) ("Our own circuit precedent requires the district court to rely solely on the plaintiff's viewpoint in meeting the requisite amount"); Burns v. Massachusetts Mut. Life Ins. Co., 820 F.2d 246, 248 (8th Cir. 1987) ("The amount in controversy in a suit for injunctive relief is measured by the value to the plaintiff of the right sought to be enforced").  It is not clear what rule applies in CAFA cases.  See Waters, 873 F.3d at 636 ("We need not resolve the issue of whether courts should apply the plaintiffs' viewpoint rule or the either viewpoint rule when determining the amount in controversy under CAFA because [defendant] did not meet its burden under either rule.").

P&G estimates the cost of its compliance with the requested injunctive relief to be $1,000,000 and did not offer any estimate of the value of the litigation from Helterbrand's viewpoint.[2] It is not necessary for me to reach the broader question of how injunctive relief should be measured in CAFA cases. Assuming without deciding that $1,000,000 is an appropriate estimate of the value of injunctive relief, as that is the only specific figure that has been proposed, it still does not bring the amount in controversy near the sum needed to establish jurisdiction under CAFA.

### 3. Attorneys' Fees

Finally, the parties dispute what attorneys' fees are appropriate. Helterbrand estimated attorneys' fees at $528,000, arriving at this figure because it constitutes one-third of the estimated $1,600,000 in compensatory damages. She cited cases indicating that 33% has been accepted as a reasonable figure in other class actions in this circuit.[3] See Schott v. Overstock.com, Inc., 2021 WL 148875, at *4 (E.D.

---

[2] If P&G's arguments about the value of injunctive relief were also intended to establish jurisdiction under § 1332(a)(1), the fact that the plaintiff's viewpoint rule applies in non-CAFA diversity cases invalidates such an attempt. P&G did not offer any estimates of the potential value of the litigation to Helterbrand. While Helterbrand also did not list specific figures, she explained that the value of the requested relief from her viewpoint would be nowhere near $75,000, given that she personally purchased only one tube of toothpaste.

[3] P&G appears to believe that Helterbrand's 33% estimate is based on some contingency agreement with her counsel, and cites O'Brien v. B.L.C. Ins. Co., 768 S.W.2d 64, 71-72 (Mo. banc 1989), in which the Missouri Supreme Court held that "counsel are entitled to a reasonable fee and are not limited to their agreed share of the client's recovery" in MMPA cases. However, both Helterbrand's motion to remand and her reply to P&G's opposition brief indicate that she based

8

Mo. Jan. 15, 2021); Barfield v. Sho-Me Power Elec. Co-op., 2015 WL 3460346, at *4 (W.D. Mo. June 1, 2015) (collecting cases).  P&G argues that the amount would be higher because the MMPA allows an award of attorneys' fees "for the amount of time reasonably expended," Mo. Rev. Stat. § 407.025.1, and the allegations in Helterbrand's petition indicate that this will be a complex case.  P&G does not offer any specific estimates about what attorneys' fees might be, but states that the "amount is likely considerable" and cites MMPA cases with large attorneys' fees awards.  Faltermeier v. FCA US LLC, 899 F.3d 617 (8th Cir. 2018) (upholding district court's conclusion that attorneys' fees could exceed $1.4 million when potential compensatory damages measured $3,605,010); Grabinski v. Blue Springs Ford Sales, Inc., 203 F.3d 1024 (8th Cir. 2000) (finding that trial court abused its discretion in denying award of $125,000 attorneys' fees when actual damages awarded totaled $7,835 and punitive damages totaled $210,000); Peel v. Credit Acceptance Corp., 408 S.W.3d 191 (Mo. Ct. App. 2013) (affirming trial court's award of $165,350 in attorneys' fees when jury assessed actual damages of $11,007 and $1,187,505 in punitive damages).

      To the extent that P&G cited Faltermeier to show the kind of attorneys' fee award that could be possible in a case like this, the fees in Faltermeier constituted

---

this estimate on attorneys' fees awarded in similar cases.

approximately 40% of the damages.[4]  Applying that figure to this case, it still is not enough to cross the jurisdictional minimum, even when P&G's proposed $1,000,000 in injunctive relief is included in the equation.

## CONCLUSION

The parties agreed that $1,600,000 was an appropriate estimate for compensatory damages. Using Helterbrand's proposed 33% attorneys' fees award, the amount in controversy totals $2,128,000.  Even considering P&G's estimated $1,000,000 in injunctive relief, and potential attorneys' fees at 40% of the award, that still does not bring the total amount in controversy to even $4,000,000.  It is therefore not possible that a fact finder "*might* legally conclude" that damages are greater than CAFA's requisite amount.  Bell v. Hershey Co., 557 F.3d 953, 959 (8th Cir. 2009) (citation omitted).

If "punitive damages find their way into the case" at a later time, removal may then be appropriate.  Pirozzi, 938 F.3d at 984 n. 1 (quoting Hurst, 511 F. App'x at 586-87).  At this time, however, P&G has not met its burden to show that this case

---

[4] P&G's other cited cases, O'Brien, Peel, and Grabinski, were not class action suits and do not provide insight into what attorneys' fees might be appropriate in this case. See Schott, 2021 WL 148875, at *4 (finding that defendant had met its burden to show that a 33% attorneys' fee award was possible by "citing other CAFA cases permitting similar awards").  Additionally, in O'Brien, the Missouri Supreme Court left the question of what attorneys' fees should be awarded for the trial court's determination on remand.

10

belongs in federal court.

Accordingly,

**IT IS HEREBY ORDERED that** Plaintiff Lisa Helterbrand's motion for remand, [16], is **GRANTED** and this case is **REMANDED** to the Circuit Court of St. Louis County, Missouri.

**IT IS FURTHER ORDERED that** the parties each bear their own costs incurred by reason of these removal and remand proceedings.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of September, 2021.

11